**STATE OF WEST VIRGINIA**

**FILED**

**June 15, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **J.P-1 and J.P.-2**

**No. 18-0194** (Hampshire County 17-JA-36 and 37)

# MEMORANDUM DECISION

Petitioner Mother J.P.-3., by counsel Jeremy B. Cooper, appeals the Circuit Court of Hampshire County's January 3, 2018, order terminating her parental rights to J.P.-1 and J.P.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Marla Zelene Harman, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court lacked jurisdiction in this case pursuant to the Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA"), she was denied effective assistance of counsel, and the circuit court erred in terminating her parental rights without first granting her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 26, 2017, the DHHR received a referral from Child Protective Services ("CPS") in Allegheny County, Maryland, indicating that petitioner had a long, ongoing history with CPS in that area. According to the reporter, petitioner and the children relocated to Hampshire County, West Virginia. Petitioner and her children were ejected from multiple homeless shelters in Maryland prior to their relocation to West Virginia. The reporter expressed concern about the well-being of the children because petitioner failed to bring the children to CPS in Maryland for a previously-scheduled appointment. The children were reportedly left in Hampshire County with petitioner's disabled, wheelchair-bound mother, who was unable to provide proper care to the children. The reporter also stated that petitioner possibly abused drugs. The CPS worker in

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children and petitioner share the same initials, they will be referred to as J.P.-1, J.P.-2, and J.P.-3, respectively, throughout this memorandum decision.

West Virginia investigated and confirmed that both children were born addicted to drugs. Subsequently, the DHHR filed an abuse and neglect petition against petitioner alleging that she left the children during the day with her disabled mother who could not properly care for the children. Both children were left in urine-soaked diapers for an extended period of time. The petition also alleged that petitioner admitted to a CPS worker to being under the influence of methamphetamine. Petitioner waived her preliminary hearing.

On July 13, 2017, petitioner attempted to enter into a stipulated adjudication, but denied that she was under the influence of substances at the time of the children's removal. The DHHR moved the circuit court to schedule a contested adjudicatory hearing, which was granted. On August 29, 2017, the circuit court held a contested adjudicatory hearing. The CPS worker testified as to the allegations in the petition and petitioner's admission to being under the influence of methamphetamine at the time of the children's removal from the home. At the close of the CPS worker's testimony, the DHHR moved to continue the hearing, which the circuit court granted. On October 20, 2017, the circuit court proceeded with the adjudicatory hearing. However, petitioner elected to stipulate to the allegations that her abuse of controlled substances and unstable housing adversely impacted her ability to parent and care for her children.

On December 21, 2017, the circuit court held a dispositional hearing. The DHHR presented evidence that petitioner tested positive for amphetamine, methamphetamine, and illicit suboxone on August 29, 2017, and that she failed to screen four times in September of 2017. Petitioner also failed to screen three times in October of 2017, and tested positive for amphetamine, methamphetamine, and suboxone on October 31, 2017. Petitioner failed to screen four times in November of 2017. A DHHR caseworker testified that petitioner was encouraged to enter into an inpatient drug treatment program, but failed to make any effort to obtain treatment. The caseworker also testified that petitioner lacked stable housing throughout the entirety of the proceedings. Petitioner presented the testimony of Dr. Mary Jo Cannon, who had prescribed petitioner suboxone since September of 2017. Dr. Cannon testified that petitioner participated in weekly counseling through the facility, but did not participate in the intensive outpatient program the facility offers. Finally, petitioner testified that she wanted to attend an inpatient drug treatment program, but offered numerous excuses as to why she had not done so. She also offered numerous excuses for why she failed to consistently submit to drug screens. She explained that she was unemployed and did not have housing. Following the parties' testimony, the circuit court denied petitioner's motion for a post-adjudicatory improvement period. The circuit court found no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the children's best interests. Ultimately, the circuit court terminated petitioner's parental rights in its January 3, 2018, order.[2] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

---

[2]The father's parental rights were also terminated. According to respondents, the children are placed with their paternal aunt and uncle. The permanency plan is adoption by the aunt and uncle.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

First, petitioner argues that the circuit court lacked jurisdiction in this case pursuant to the UCCJEA because Maryland was the "home state" of the children and because the family's CPS history was there. Additionally, petitioner argues that while the issue of jurisdiction was not raised below, it is appropriate for appellate review under "plain error." "The 'plain error' doctrine grants appellate courts, in the interest of justice, the authority to notice error to which no objection has been made." *State v. Miller*, 194 W.Va. 3, 18, 459 S.E.2d 114, 129 (1995). To satisfy the "plain error" standard to allow appellate review of unpreserved errors, the appellate court must find: "(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id*. at 7, 459 S.E.2d at 118, Syl. Pt. 7, in part. We find that this assignment of error is not appropriate for review under "plain error" for the following reasons.

Petitioner relies on West Virginia Code § 48-20-201(a)(1), which provides that a court in West Virginia has jurisdiction in a matter concerning child custody when

[t]his state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this state but a parent or person acting as a parent continues to live in this state[.]

However, West Virginia Code § 48-20-204(a) provides that

[a] court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

Further, West Virginia Code § 49-4-601(a), provides that

[i]f the department or a reputable person believes that a child is neglected or abused, the department or the person may present a petition setting forth the facts to the circuit court in the county in which the child resides, or if the petition is being brought by the department, in the county in which the custodial respondent or other named party abuser resides, or in which the abuse or neglect occurred, or to the judge of the court in vacation.

While petitioner argues that Hampshire County was not the home state of the children, jurisdiction was appropriate because the DHHR filed the petition upon allegations of abuse and neglect by petitioner that occurred at her mother's home in Hampshire County. Petitioner left the children with her disabled mother who could not properly care for the children. Further, petitioner returned to the home admittedly under the influence of methamphetamine. Clearly the children were present in the state and asserting emergency jurisdiction was necessary for their protection.

Furthermore, according to West Virginia Code § 48-20-204(b)

[i]f there is no previous child custody determination that is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction under sections 20-201 through 20-203, inclusive, of this article, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under sections 20-201 through 20-203, inclusive, of this article. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under sections 20-201 through 20-203, inclusive, of this article, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

Despite petitioner's CPS history in Maryland, no abuse and neglect proceedings were initiated in that state. Further, there is no evidence of any previous custody order issued by another state. Therefore, the Circuit Court of Hampshire County appropriately had jurisdiction in this matter. Moreover, the circuit court's order was a final determination of the custody of the children and West Virginia was determined to be the children's home state. Accordingly, we find no error.

On appeal, petitioner also argues that she was denied effective assistance of counsel due to her prior counsel's failure to raise the jurisdictional issue below. It is important to note that this Court has never recognized a claim of ineffective assistance of counsel in an abuse and neglect proceeding and we decline to do so here, especially in light of the fact that under the limited circumstances of this case, petitioner's counsel provided her with effective representation below. As discussed above, the Circuit Court of Hampshire County properly exercised jurisdiction over these proceedings. Therefore, we find petitioner is entitled to no relief in this regard.

Next, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. However, West Virginia Code § 49-4-610(2)(B) requires a parent to demonstrate, "by clear and convincing evidence, that the [parent] is likely to fully

participate in the improvement period." Petitioner failed to present evidence necessary to meet this burden. Throughout the proceedings, petitioner continued to abuse illegal substances and failed to enter into an inpatient rehabilitation program, as advised by the DHHR. Petitioner also missed numerous drug screens in September, October, and November of 2017. Additionally, petitioner did not obtain employment or housing. Based on this evidence, the circuit court did not err in denying petitioner's motion for a post-adjudicatory improvement period.

Further, we find that the circuit court properly terminated petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" The evidence discussed above also supports the circuit court's findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the children's best interests. As discussed, petitioner failed to obtain housing and employment, continued to abuse substances during the proceedings, and failed to enter into an inpatient treatment program. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 3, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  June 15, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Allen H. Loughry II, suspended and therefore not participating

5